## H. C. JUDD & ROOT v. NEW YORK & T. S. S. CO.

(Circuit Court of Appeals, Third Circuit. February 12, 1904.)

### No. 18.

1. EVIDENCE—COMPETENCY—ADMISSIONS OF ONE NOT A PARTY TO THE RECORD.

In an action by the owner of goods against a carrier to recover for a loss of goods through the alleged negligence of the defendant, in order to render admissions of an insurer of the goods, as against its interest, admissible (if admissible under any circumstances), it must have been a party to the suit, either on the record or otherwise, in complete control of the litigation. It must not only have paid to the insured in full and unconditionally the indemnity for which it had become liable, but it must have actually asserted its right of subrogation by bringing and controlling the suit in the name of the assured, before it can be invested with such an interest as a real party as to render its admissions competent evidence in behalf of defendant. The fact that it has a contingent or collateral interest in the result of the suit growing out of its contract with plaintiff, with which defendant has no concern, cannot render its admission competent evidence to relieve defendant from liability under its contract with plaintiff.

**2. SAME—RELEVANCY.**

In an action against a carrier to recover the value of goods destroyed by fire while in defendant's custody through its alleged negligence in placing them in a warehouse adjoining one which was at the time subject to special hazard from fire because of its contents and the conditions existing, the fact that the insurer of the goods lost, with other companies, had at some previous time established a uniform rate of premiums for insurance on both warehouses, is irrelevant to prove an admission by the insurer that defendant was not negligent in the respects alleged, conceding that the admission, if proved, would be competent evidence.

Acheson, Circuit Judge, dissenting.

On Rehearing.
For former opinion, see 117 Fed. 206.

GRAY, Circuit Judge. The plaintiffs in this case brought suit against the defendant for the recovery of damages resulting to them from the loss by fire of a large amount of wool, stored in the sheds of the defendant while awaiting transportation. The plaintiffs alleged and adduced evidence tending to show negligence on the part of the defendant, in storing this wool in a shed adjoining another shed, not in its ownership or control, containing a large amount of jute, alleged to be exceedingly inflammable, and which, as the shed was an open one, was exposed to the sparks of passing locomotives. There was also evidence tending to show that it was the rendezvous of a number of tramps, idle boys and men, who loafed and slept on top of the jute bales, where they were frequently seen playing cards and smoking pipes. It was also testified that no watchman was employed by those who owned this adjoining shed, and there was evidence tending to show that these conditions were known to the defendant, when it stored the wool of the plaintiffs in its own shed.

At the trial in the court below, the learned judge gave a peremptory instruction to the jury to find for the defendant, and upon a writ of error to the judgment entered on that verdict, this court reversed the same and ordered a new trial, on the ground that the testimony tending to show extraordinary hazard to which the wool of the plaintiffs had been exposed by the defendant, while performing his contract of transportation, and the consequent alleged liability on its part to the plaintiffs for its loss, should have been submitted to the jury. It was upon this general view that the judgment below was reversed and the new trial ordered. There was, however, another assignment of error, as to which this court in its opinion said (117 Fed. 206, 212, 54 C. C. A. 238):

"It would not be necessary to notice the second assignment of error, were it not that the disposition of this case will involve a new trial, and it is important that the views of this court should be expressed in regard to the subject matter of that assignment. Evidence was admitted, against the objection of the plaintiffs, to show that the wool was insured in the Insurance Company of North America, and that the insurance money had been paid to plaintiffs, under an agreement that the money should not be repaid, unless plaintiffs were able in this suit to recover it. This evidence was offered by defendant, avowedly for its bearing upon the question of negligence. It was to show that the insurance company was the real plaintiff, and that as it, with other insurance companies, had a uniform rate of premium for insurance on the sheds, it was estopped, as real plaintiff, from saying that the risk was unusually hazardous. The payment made by the insurance money to the plaintiff was, as shown by

the receipt in evidence, a conditional loan, and not a payment. It did not destroy plaintiff's right of action against the defendant, nor put the insurance company in the situation of a real or nominal plaintiff, so that its admissions or conduct could be taken in anywise to affect the real plaintiff by estoppel or otherwise. Even if the loss had been out and out paid, the equitable right of subrogation inuring to the insurer, would only authorize him to use the name of the insured in an action against one whose failure of duty to the insured caused the loss. There is no contract or privity between the insurer and the defendant. In St. Louis R. R. Co. v. Commercial Union Insurance Company, 139 U. S. 223 [11 Sup. Ct. 554, 35 L. Ed. 154], the court says: 'By the strict rules of the common law, it (the right of the insurer) must be asserted in the name of the assured, but in any form of remedy, the insurer can take nothing by subrogation, but the rights of the assured, and if the assured have no right of action, none passes to the insurer.' The rights in litigation in this case are those which accrue out of the contractual relations existing between the plaintiffs and the defendant company. No others are the subject of discussion or determination, and nothing that passed between the plaintiffs and the insurance company can affect those rights. The transaction between the insurance company and the assured was, therefore, without relevancy, and was incompetent as evidence in the case."

It is as to the soundness of the views here expressed upon this single point, that a rehearing was asked for and granted. We have carefully considered the argument of counsel at the rehearing, and find no reason to change the opinion expressed by this court, as to the impropriety of admitting the evidence as to the transaction between the plaintiffs and the insurance company, and as to the rates imposed by that company and other insurance companies upon buildings of a like character and situation to that in which the wool was destroyed.

The testimony admitted by the court below, against the objection of the plaintiffs, was, first, that the wool was insured by plaintiffs in the Insurance Company of North America, and that the amount of the insurance money had been paid by the company to the plaintiffs as a loan, to be held as security for the liability of said company to the plaintiffs, if they should fail to collect from the carriers of the wool insured the loss of the same, but that in the event of success in collecting the said loss, the said money so loaned to be repaid to the insurance company; second, that the said insurance company, together with other insurance companies, had fixed a uniform rate for goods stored in all the sheds or warehouses situated along the said water front of Galveston, including that of the defendant, in which the wool was stored, and the adjoining shed where the jute was stored and the fire originated. Assuming for the moment the relevancy of the facts thus introduced, we will consider the legal propriety of the evidence by which they were sought to be established. A fact may be relevant, while the testimony by which it is offered to be proved may be inadmissible. A fact, though relevant, cannot, as a general rule, be proved by hearsay testimony. In this case, it is sought to avoid this objection by the contention that the offered testimony is within the exception to this rule, as being an admission against interest of those who, while not parties of record, were yet so interested in the subject matter of the suit, as to be the real parties plaintiff. The ground alleged, upon which it was and is contended that this particular testimony was admissible, is, that the payment of the insurance money to the plaintiffs, though in form of a loan, was an absolute payment, which made the Insurance Com-

pany of North America the real plaintiff and party in interest, and being such, the fact that it had charged certain rates for insurance, as stated, was, in effect, an admission that there was no extra hazard, in its opinion, attached to the storing of the wool in the shed of the defendant, under the circumstances stated; or, in other words, that it was admissible upon the ground that such conduct was an admission against interest of the real party plaintiff in the suit, or at least of a party so identified in interest as to make its admissions, under the circumstances, evidence in the case.

The principal authority cited by the defendant below, in support of this contention, is this statement made by Greenleaf, in his work on Evidence, volume 1, § 180:

"The law, in regard to this source of evidence, looks chiefly to the real parties in interest, and gives to their admissions the same weight, as though they were parties to the record. Thus the admissions of the cestui que trust of a bond; those of the persons interested in a policy effected in another's name, for their benefit; those of the shipowners, in an action by the master for freight; those of the indemnifying creditor, in an action against the sheriff; those of the deputy sheriff, in an action against the high sheriff for the misconduct of the deputy; are all receivable against the party making them. And, in general, the admissions of any party represented by another, are receivable in evidence against his representative."

But it is not every collateral, incidental or contingent interest in the result of a suit, that furnishes legal ground for the introduction of hearsay testimony, as being the admission of a party in interest. For instance, take the cases cited by Greenleaf, in the passage just quoted, and we find the kind of interest, which makes the admissions of a person evidence in a case in which he is not a nominal or real party, very different from that of the interest of the insurance company in the result of the suit in the case before us. Thus, the interest of the cestui que trust of a bond, in a suit by the trustee, is an original interest, and not a mere incidental interest in the result of the suit; so also, the interest of persons in a policy effected in another's name, for their benefit. This is another case of trustee and cestui que trust; so also of the shipowners, in an action by the master for freight; the interest of the shipowners and master is identical and original in the thing itself that is sued for, not a mere incidental interest in the result of a suit; so also the interest of the indemnifying creditor, in an action against the sheriff for trespass; the creditor controlled the writ under which the sheriff acted, and the sheriff committed the alleged trespass by the direction of the indemnifying creditor. The same is true as to the action of a deputy sheriff, in a suit against the high sheriff, for the misconduct of the deputy.

The last clause of the citation from Greenleaf shows the character of the interest which, in the opinion of the learned author, will justify the reception of the admissions to which he refers. It is this: "And in general, the admissions of any party represented by another are receivable in evidence against his representative." In no sense are the plaintiffs in this case the representatives of the insurer, in the suit brought by them against the wrongdoer. The liability of the latter to the plaintiffs arose out of a contractual relation between them, to which the insurance company was in no wise privy, and the contract be-

tween the plaintiffs and the insurance company was solely collateral thereto. The insurance company, by reason of its insurance, had no original relation to the contract between the plaintiffs and the defendant in this suit, or to the tort which constituted the cause of action. Without undertaking to define with exactness the interest which one must have in the subject-matter of the suit, to render his admissions evidence against either plaintiffs or defendant, it is obvious that the interest described by Greenleaf as sufficient for this purpose, in the passage cited, grows out of conditions very different from those existing in the case before us.

Again, it is to be observed that the so-called admissions in this case were not made with reference to the particular negligence charged against the defendant. Indeed they could not have been so made, as the goods had only been stored two or three days in the defendant's shed when the fire happened. They must, therefore, have been made sometime before the negligence in the storing could have occurred, as alleged. That is to say, the negligence, owing to which the goods were destroyed, had not happened at the time the uniform rates of insurance testified to were fixed, and the so-called admissions were not part of, or related to, the res gestæ out of which this litigation arose. Certainly they were not made with reference to that happening, and it is easy to see the pertinency of the statement by Greenleaf, in section 179 of the volume already quoted from, viz.:—

"The admissions, which are thus receivable in evidence, must, as we have seen, be those of a person having at the time some interest in the matter afterwards in controversy in the suit to which he is a party."

Lamar v. Micou, 112 U. S. 452, 465, 5 Sup. Ct. 221, 28 L. Ed. 751.

But, however this may be, the inadmissibility of these so-called admissions does not rest on this ground alone. We have considered the interest of the insurance company in this suit, as an indemnitor of the plaintiffs, without regard to whether it has paid to the plaintiffs the amount for which it had become liable under its contract. It could make no possible difference to the steamship company, the wrongdoer and defendant, whether the insurance company had made good its contract of indemnity to the plaintiffs, or not. Its liability to the plaintiffs could in no wise be affected by what occurred in that regard between the plaintiffs and their indemnitor. The defendant in the suit could not have interposed as a defense the receipt by the plaintiff, from the insurance company, of full indemnity for the loss sued for. The plaintiffs, notwithstanding such receipt, could have recovered in their suit against the wrongdoer, and thus have obtained possession of the money recovered from the latter, in addition to the money received from the insurance company. It is true, that the insurance company, in the latter case, would have a claim against the assured to recoup itself, in full or pro tanto, for the indemnity it had paid. If the insurance company had never paid a penny to the assured, but stood by, knowing that if the assured recovered from the wrongdoer, it would be relieved from payment, its interest in the suit would be precisely the same, in its essential nature, as though it had paid in full and unconditionally, (provided it had not availed itself of its right of subrogation) knowing

that it could recover from the assured the amount he obtained by suit from the wrongdoer.

It is contended, however, by the defendant in error, that the advance of the amount of the insurance, by way of loan or indemnity, constitutes the insurer the real party in interest, whether it shall appear from the record that the insurer has, or has not, in the exercise of the right of subrogation, actually brought the suit in the name of the insured, or is, or is not, in control of the litigation. In this connection, the doctrine of subrogation was much discussed by counsel for the defendant in error. It is, of course, true, that where an insurer has paid to the insured, unconditionally and in full, the indemnity contracted for, he has the equitable right to be subrogated to all the remedies which the assured had for the recovery of the loss insured against, and may therefore bring and control, in the name of the assured, a suit against a wrongdoer who has occasioned the loss. As we have already said in our former opinion, quoting the language of the Supreme Court, the right of the insurer must be asserted in the name of the assured, and in any form of remedy, the insurer can take nothing by subrogation but the rights of the assured.

It is not necessary that we should in this case determine what the effect upon the question before us would be, if the insurance company had paid, unconditionally and in full, the amount of its insurance to the assured, and was by subrogation in control of the suit against the steamship company. The doctrine of subrogation has no relation to the question to be here determined. It cannot be invoked until the insurance company, as the one secondarily liable, has absolutely and unconditionally paid in full the amount of the indemnity for the loss in question. It would have then, and only then, under this doctrine, a right to assert in its own favor the rights and remedies of the insured. Had it done so, it would be material to consider what its relation, in a suit brought for its benefit and under its control, would have been to the alleged default of the transportation company, and the competency of its own admissions as evidence in the case. In this suit, not only was there nothing affirmatively to show that the insurance company was in control thereof, and no evidence showing that it was in a situation, even, to assert a right to control, but, the receipts put in evidence by the defendant absolutely negative the right of the insurance company to invoke the doctrine of subrogation, inasmuch as they show no absolute and unconditional payment of the indemnity, but a receipt by the insured of money from the insurance company "as a loan without interest, to be held by the undersigned as a security for the liability of the said company to the undersigned, if the undersigned shall fail to collect from the carriers of the wool insured the loss of the said wool while in the custody of said carrier, and in the event of success in collecting said loss from said carrier the said money so loaned is to be repaid to said insurance company by the undersigned." Certain it is that there could be no right to subrogation without an absolute payment by the insurance company of the indemnity, and the intention of the parties shown on the face of the receipts, clearly precludes any constructive conversion of the loan into a payment of such a character as to permit the operation of the doctrine of subrogation, until after

the stage in the case had been passed when the evidence objected to was admitted. There is nothing in the provisions or nature of the receipts suggestive of fraud or unfair dealing toward the steamship company or any one. It was a matter of no concern to the alleged wrongdoer what arrangements were made as between the plaintiffs and the insurance company, with respect to the contract of indemnity The plaintiffs and the insurance company were at liberty to enter into such stipulations as they thought proper, touching that subject-matter, without in anywise affecting the primary liability of the steamship company, for which the suit was brought. In order to render any admissions on its part as against its interest admissible, (if admissible under any circumstances) it must have been a party to the suit, either on the record or otherwise, in complete control of the litigation. It must not only have paid to the assured, in full and unconditionally, the indemnity for which it had become liable, but it must have actually asserted its right of subrogation, by bringing and controlling a suit in the name of the assured, against the wrongdoer, before it can be invested with such an interest as a real party as would render its admissions competent evidence in behalf of the defendant. Instead of putting itself in this position, the insurance company chose to deal with the assured in the manner set forth in the record; to pay an amount equal to the insurance money, as a loan or security (which it had a right to do) and thus put itself in the situation of one who had a merely contingent and collateral interest in the suit brought by the assured, and not of one who had a direct and immediate interest therein, of such character as that any recovery had against the steamship company would of itself entitle it to receive the moneys recovered. No case or authority has been cited by the able counsel for the defendant in error, in direct support of his contention in the premises, or inconsistent with the view here taken.

But another vital, and, indeed, underlying, question, as to the admissibility of this evidence, is one of relevancy. Assuming the mode of proof to be unexceptionable, what bearing has the fact so offered to be proved upon the issue between the plaintiffs and defendant in this suit? The fact offered to be proved is the conduct of certain insurance companies, including the Insurance Company of North America, in fixing a uniform rate of insurance upon the sheds along the water front of Galveston, in one of which the loss in question occurred. The fact itself is colorless and irrelevant. Its only value is as the foundation of an inference, more or less probable, that the Insurance Company of North America was of the opinion that there was no extraordinary hazard in storing the goods of the plaintiffs in one of those sheds. It was not offered to prove that the insurance company had expressed this categorical opinion, or one to that effect. The thing proved was the fact, as above stated, from which an inference was at best only arguable. This, surely, is too remote to be brought within any fair construction of the rule as to relevancy. Not only is it too remote, but the inference which the defendant in error asks us to draw is not a necessary one, nor even a probable one. The reasons for fixing this alleged uniform rate, do not appear. They may have been determined upon, as covering the very conditions out of

which the fire risk arose. We find, in the testimony of one of the witnesses produced by the defendant in error, as an expert insurance agent, to prove this alleged uniform rate of insurance, the following:

"Q. Did or did not the rate which you have just testified to apply to all of the sheds and warehouses on the wharf front in Galveston? A. It did apply, with one exception, and that exception was, where a day and night watchman were kept constantly on duty, a lower rate was charged."

This testimony is nowhere contradicted or qualified. We thus have the fact proved, that this alleged uniform rate was meant to cover the special risk that existed where no day and night watchman were employed. But the very gravamen of the case of the plaintiffs, was, that this special risk was caused largely by reason of the fact, known to defendant, that no watchman, either by day or night, was employed in the shed where the jute was stored, directly adjoining that of the defendant, where the wool of the plaintiffs was stored. So we see how unjust it would be to ask that the inference contended for by the defendant in error, should be drawn, in the face of the fact that the insurance companies themselves considered the nonemployment of day and night watchmen a special hazard to be covered by a higher rate of insurance. There were other special circumstances of risk proved by the plaintiffs, such as the daily and nightly gathering of tramps and loafers, in the shed where the highly inflammable jute was stored, who smoked pipes and cigars while lying on top of the bails. These conditions were not necessarily permanent, and did not presumably enter into the question of the rates to be charged by the insurance companies. This special hazard, from which most probably the fire actually occurred, could not have been taken into consideration in fixing the uniform rates of insurance. The admission of such testimony would not, in our opinion, tend to the elucidation of the truth, in determining the question of negligence or no negligence on the part of the defendant, but could only tend to confuse the minds of the jury, and lead them away from the real issue in the case.

The question of relevancy must largely depend upon the opinion of the judge or the court to whom it is presented. In this case, we have no hesitancy in saying that, in our opinion, the relevancy of the facts sought to be proved, is too remote to be recognized.

Adhering to the opinion already expressed upon this point, the judgment below is reversed and a new trial ordered.

ACHESON, Circuit Judge. I dissent from the views and conclusion of the majority of the court above expressed.