# FIELDS v. GORDON et al.—203 S. W. (2d) 934.

Western Section.   April 15, 1947.

Petition for Certiorari Denied by Supreme Court, June 26, 1947.

112

J. W. Rankin and R. E. L. Gallimore, both of Martin, and John Hart, of Union City, for plaintiff in error.

George C. Rowlett, of Martin, for defendants in error.

ANDERSON, P. J. This was an action by a bailor against a bailee for hire. The plaintiff charged in his declaration that he delivered to the defendants a quantity of sweet potatoes for "curing, storage and safe-keeping" until called for; that due to the negligence of the defendants, the warehouse in which the potatoes were kept and its contents were destroyed by fire, and that the defendants had refused to pay him for the loss.

At the conclusion of the plaintiff's evidence, the judge sustained a motion by the defendants for a directed verdict and accordingly dismissed the suit. The plaintiff ap-

pealed in error, and insists that the case he made was prima facie one for the jury.

In some respects the evidence was rather vague, but considered in the light most favorable to the plaintiff, and as a whole, we think it can be fairly said to tend to show these facts:

The defendants were in the business of curing and storing sweet potatoes for hire. They owned and operated a warehouse for that purpose. In October, 1945, the plaintiff delivered to them twenty-seven bushels of potatoes to be stored in the warehouse and cured, agreeing to pay for that service at the rate of 10c per bushel. The contents of the warehouse, including the plaintiff's potatoes, were destroyed by fire on February 8, 1946. The building in which the warehouse was located was about 100 feet long and 60 feet wide. The northwest corner was cut off from the warehouse and in it a tenant of the defendants operated a restaurant. Upstairs over the end of the building in which the restaurant was located were rooms occupied by four or five lodgers.

There were two or three doors to the warehouse proper and several windows on each side three feet by three feet in size. From a sketch introduced in the record, it appears that the outside walls of the building were brick and one inside wall in the warehouse constructed of wood. The walls separating the part used as a restaurant from that used as a warehouse were also of wood and about a quarter of an inch thick. They were covered with paper. This also appears to have been true of the walls of the rooms occupied by the lodgers. Moreover, in these rooms there was coal, kindling, newspapers, magazines, and the like.

In the warehouse were located at least three coal-burning stoves. There was a quantity of coal in the warehouse and it is a fair inference that a fire in the stoves was kept

continuously, presumably for the purpose of aiding in the process of curing the potatoes. A second-hand kerosene stove was used for cooking in the restaurant. A supply of kerosene was kept in a hallway leading from the restaurant into the warehouse. Grease on the stove as a result of the cooking process caught fire on one or two occasions prior to the destruction of the warehouse and while the restaurant was being operated by a former tenant. This fact was known to the defendants at the time they rented to the tenant operating the restaurant at the time the loss occurred.

About 10 o'clock P. M. on February 8, 1946, when, preparatory to closing his business for the night, the restaurant operator attempted to extinguish the fire in the oil stove by turning a gadget of some kind, an explosion occurred. The building was ignited and the fire spread rapidly to the warehouse, damaging or destroying the contents.

At that time the warehouse contained several thousand bushels of sweet potatoes. These were in wooden hampers and on one side of the building were stacked so high and close to the windows as to prevent the firemen from using the openings in their efforts to extinguish the fire. In neither the restaurant or the warehouse were there any fire extinguishers or other fire-fighting equipment, and while the evidence on the point is vague, we think that by giving it the construction most favorable to the plaintiff, it was sufficient to warrant the inference that there was no watchman on duty, at least in the night.

It is obvious from the pleadings that the plaintiff's action is one in tort. Where this is true the burden of proof in its proper sense, that is, in the sense of risk of non-persuasion, is on the plaintiff and never shifts. However, in a case of this kind, as in other cases, the bur-

den of going forward with the evidence may shift back and forth. In this jurisdiction, if a bailor prove the delivery of the goods, a failure to return on demand and no more, the burden of proving a prima facie sufficient excuse for failure to produce the property passes to the bailee. If the latter account for his failure to return the property in a manner that is consistent with the exercise of ordinary care, that is, by showing a cause that might or might not be negligent, the prima facie presumption that nothing else appearing, every man exercises ordinary care comes to his aid and operates to shift to the plaintiff the burden of proving that the cause shown by the defendant was due to negligence. Noel & Co. v. Schuur, 140 Tenn. 245, 204 S. W. 632; Smith v. Noe, 159 Tenn. 498, 19 S. W. (2d) 245. But a plaintiff may, and sometimes does, as did the plaintiff in this case, go further than he is obliged to go in the first instance, by himself pleading or proving a cause for the defendant's default which is consistent with the exercise of ordinary care, as where he pleads a loss by fire or theft. See Farrell-Calhoun Co., for Use of Automobile Ins. Co. of Hartford, Conn., v. Union Chevrolet Co., 21 Tenn. App. 554, 113 S. W. (2d) 419, and cases cited; 8 C. J. S., Bailments, Sec. 50, p. 348. Where this is true, the plaintiff thereby eliminates the shifting of the burden of going forward with the evidence which otherwise would have taken place, and without the defendant saying anything, must go forward and show that the cause of the default was due to negligence. In short, he has served the defendant by himself pleading or showing what otherwise the defendant would have been obliged to show. 8 C. J. S., Bailments, Sec. 50, p. 348, 6 Am. Jur. 451, 452; Notes, 9 A. L. R. 574; 71 A. L. R. 777; 151 A. L. R. 725.

It is obvious however that since the subject of the bailment is ordinarily under the exclusive control of the bailee, the latter is in a much better position to know what precautions were taken for its care than is the bailor. In recognition of this fact, it is said than an increasing number of authorities take the view that a showing of loss or damage by an unexplained fire or theft is sufficient to carry the case to the jury on the issue of the bailee's negligence, even though the bailor has the ultimate burden of proof on that issue. See, 6 Am. Jur. 452; C. J. S., Bailments, Sec. 50, p. 349.

A well-considered case adopting this view is that of Beck v. Wilkins-Ricks Co., 179 N. C. 231, 102 S. E. 313, 9 A. L. R. 554 and Note. See also, Elon College v. Elon Banking & Trust Co., 182 N. C. 298, 109 S. E. 6, 17 A. L. R. 1205; and compare, Commercial Molasses Corp. v. New York Tank & Barge Corp., 314 U. S. 104, 62 S. Ct. 156, 86 L. Ed. 89. There is much in this view that appeals to one's sense of fairness, even though theoretically it fails to yield proper obeisance to the presumption that every one acts with due care—a favorite presumption of the law which, from the standpoint of justice, at times seems more academic than practical.

A liberal trend is also shown by the fact that in the class of cases before us, the authorities who have not gone so far as to adopt this rule have taken the position that a bailor who proves a loss by fire, theft or similar cause may nevertheless "make out a prima facie case sufficient to go to the jury by slight evidence of circumstances surrounding the occurrence from which negligence might be inferred, or which should call for some explanation on the part of the bailee." See, 6 Am. Jur. 453.

Thus, it has been held that a prima facie case is made where the loss is due to a fire shown to have originated

on the bailee's premises or to a theft shown to have occurred under circumstances justifying the inference that the bailee either had some knowledge concerning it which should be disclosed or could have prevented it by the exercise of the requisite degree of care. The cases are collected in annotations appearing in 9 A. L. R. 574, 71 A. L. R. 777; 26 A. L. R. 237; 48 A. L. R. 386.

The rationale of the decision in Western Union Tel. Co. v. Lamb, 140 Tenn. 107, 203 S. W. 752, though involving a different issue, seems to be in line with this view. See also, National Life & Accident Ins. Co. v. Morrison, 179 Tenn. 29, 41, 162 S. W. (2d) 501; Carter v. Hodges, 175 Tenn. 96, 132 S. W. (2d) 211; Sledge v. Hunt, 157 Tenn. 606, 12 S. W. (2d) 529.

But the view that a showing of loss by an unexplained fire or theft is sufficient to shift to the bailee the burden of going forward with the evidence, is still a minority rule and is not in force in this jurisdiction, as the cases above cited demonstrate. Noel & Co. v. Schuur, supra; Smith v. Noe, supra; Ferrell-Calhoun Co., for Use of Automobile Ins. Co. of Hartford, Conn , v. Union Chevrolet Co., supra.

■ Hence in the present case, when the plaintiff pleaded that the failure to return the property was due to its loss by fire, he lifted from the defendant's shoulders the burden of an explanation and the question is whether under the rule in this state there was sufficient evidence to take the case to the jury on the issue of the defendant's negligence. We think there was.

■ The care required of bailees in a case of this kind is that which men of ordinary prudence exercise under similar circumstances with respect to their own property or the property of others placed in their custody. It is a question of fact to be determined with reference to

all the circumstances of the particular case. Thus it is said that "the nature and value of the property, its exposure to damage or loss, its proximity to danger from fire, the means employed to prevent or arrest the progress of the fire, the location, character and construction of the storehouse in which it was placed are elements to be considered." Barron v. Eldredge, 100 Mass. 455, 1 Am. Rep. 126; see also, Judd v. New York & T. S. S. Co., 3 Cir., 117 F. 206, 54 C. C. A. 238, rehearing in 3 Cir., 128 F. 7, 62 C. C. A. 515; Leland v. Chicago, M. & St. P. Railway Co., Iowa, 23 N. W. 390, 392; Wiley v. Locke, 81 Kan. 143, 105 P. 11, 24 L. R. A., N. S., 1117, 19 Ann. Cas. 241.

Much depends on the nature of the risk. For instance, it may be such as that ordinary care requires a watchman to be on duty. Thus, in Lancaster Mills v. Merchants' Cotton Compress Co., 89 Tenn. 1, 35, 14 S. W. 317, 324, 24 Am. St. Rep. 586, the Court approved an instruction to the jury defining the duty of a warehouseman, which, in addition to a statement of the general rule, contained the following:

"The warehouseman must erect a good building, reasonably suited and adapted for safe-keeping of the particular property intended to be taken care of (it need not be fire-proof), and he must keep it watched in proportion to the risks he is subject to, and the value of the goods with which he is likely to be intrusted, having, of course, in view the position in which his building is to stand, and his capacity of thus burdening himself without incurring unjustifiable expense."

For the defendant it is argued with much earnestness that since, under the undisputed evidence, the fire was caused by the explosion of the oil stove resulting from an act of the defendant's tenant, the negligence, if any, was that of the tenant and cannot be im-

puted to the defendants as his landlord. But the effort to hold the defendants liable was not confined to the view that they were responsible for setting out the fire. The pleadings are broad enough to include the theory that the defendants were responsible as warehousemen for having negligently exposed the plaintiff's property to the hazard of a blaze. Every fire of course involves some hazard and one that is frequently and necessarily incurred in every-day transactions. To prevent loss or damage from it, ordinarily prudent men take such reasonable precautions as the circumstances of a particular case require. In the record before us, fires were constantly burning in stoves in the warehouse and in and of themselves created some risk to the building and its contents. We think a jury might have found also that this risk was increased by the operation of the restaurant in a part of the building and the use in that connection of an oil burning stove and the maintenance of a supply of fuel in a passageway leading to the warehouse. These facts if found to be true and known to the defendants, considered with the nature of the construction of the building, constituted a hazard to which the defendants exposed the plaintiff's property. Whether such exposure was an act of negligence—that is, whether the defendants took the precautions required by ordinary care to prevent loss or damage by reason of the property being subjected to that risk, we think was a question for the jury. See 22 Am. Jur. 604, sec. 14. We intimate no opinion as to how the jury ought to answer it. We hold no more than that the evidence presented an issue which was for that tribunal rather than for the court to determine. See generally, 22 Am. Jur. 604, sec. 14, and Gulf Compress Co. v. Harrington, 90 Ark. 256, 119 S. W. 249, 23 L. R. A., N. S., 1205; Planters' Cotton & Ginning Co. v. Hartford Fire Ins. Co., 132 Ark. 30, 200 S. W.

147; Chicago & A. R. Co. v. Scott, 42 Ill. 132; Dieterle v. Bekin, 143 Cal. 683, 77 P. 664; Judd v. New York & T. S. S. Co., 3 Cir., 117 F. 206, rehearing in 3 Cir., 128 F. 7; Merchants', etc., Ass'n, v. Wood, 64 Miss. 661, 2 So. 76, 60 Am. Rep. 76, later appeal Merchants' Wharf-Boat Ass'n v. Heidingsfelder, 64 Miss. 678, 2 So. 242, 243; Farmers' Mercantile Co. v. Northern Pac. R. Co., 27 N. D. 302, 146 N. W. 550, 556; Runkle v. Southern Pac. Milling Co , 184 Cal. 714, 195 P. 398, 16 A. L. R. 275; Wichita Valley R. Co. v. Golden, Tex. Civ. App., 211 S. W. 465; Grieve v. New York Cent. & H. R. R. Co., 25 App. Div. 518, 49 N. Y. S. 949; Cox v. Central Vermont R. Co., 170 Mass. 129, 49 N. E. 97.

It is insisted, however, that "the last conscious agency that had control of the instrumentality that set off the fire was the owner of the cafe, Mr. Prince, and that being true, the defendants cannot be held liable under any circumstances." It is asserted with confidence that this is true upon the authority of Ford Motor Co. v. Wagoner, Tenn. Sup., 192 S. W. (2d) 840, 842, 164 A. L. R. 364. We think this view misconceives the theory of the action and we are unable to adopt it. Under the evidence the question of legal or proximate cause was, in our opinion, one about which, to say least of it, reasonable minds might differ, and hence was not an issue to be determined by the court as a matter of law. Had a jury found that the risk of harm to which the plaintiff's property was exposed was created by reason of the failure of the defendants to exercise the requisite degree of care, then we think they might have further found that the origin of the fire was reasonably within the four corners of the risk so created and hence that the negligence of the defendants was the legal or proximate cause of the loss, notwithstanding that the fire was directly due to an explo-

sion of the tenant's stove. See: Inter-City Trucking Co. v. Daniels, 181 Tenn. 126, 131, 178 S. W. (2d) 756.

The result is, the judgment is reversed and the case is remanded for a new trial. The costs of the appeal are adjudged against the defendants; the costs of the trial court will abide the event of another trial.

Felts and Baptist, JJ., concur.