LEON SILVERMAN, PLAINTIFF IN ERROR, *v.* CITY OF CHATTANOOGA, TENN., DEFENDANT IN ERROR.

(*Nashville,* December Term, 1932.)

Opinion filed March 8, 1933.

H. W. Schoolfield, for plaintiff in error.

Eugene Tatum, for defendant in error.

Mr. Justice Chambliss delivered the opinion of the Court.

The City of Chattanooga owns and operates a Municipal Airport on land acquired for that purpose located something more than two miles beyond its corporate limits. Silverman operated his airplane at and over this airport in violation of an ordinance regulating the operation of aircraft, and he appeals from a judgment against him of a fine and costs, insisting that the City was without power to punish for this violation of its ordinance, because it was without jurisdiction of this territory lying beyond the charter limits of the City, even though owned and operated as an airport by the municipality. The case is here on a stipulation of facts.

It is well established, and it appears to be conceded, that a municipality may own property for this and other purposes lying outside of the corporate bound-

aries and may there exercise the usual powers incident to ownership. This is so by statute (Shannon's Code, Sec. 1922) and we have several decisions to this effect. *City of Nashville* v. *Vaughn,* 158 Tenn., 498; *Reams* v. *Board of Aldermen of McMinnville,* 155 Tenn., 222. Moreover, it appears that by Chapter 2 of the Private Acts of 1929, the City of Chattanooga was expressly authorized to acquire, establish and operate an airport, either within, or without, its corporate limits.

However, it is insisted for plaintiff in error that neither by the Act of 1929, above mentioned, nor otherwise, had the City been empowered to enforce the violation of its ordinance in this territory, or any other territory owned by it, located more than two miles beyond the corporate limits.

▮▮▮▮ It appears that the charter of the City of Chattanooga contains the following provision: "The Board of Commissioners shall have power by ordinance within the City to provide for enclosing, improving and *regulating* all public grounds belonging to the City in or out of the corporate limits." The City is further authorized by its charter to "pass all ordinances not contrary to the constitution and laws of the State that may be necessary to carry out the full *intent* and meaning of this Act, and to accomplish the object of the City's incorporation." We have italicized the word "regulating" as the pertinent determinative expression found in the charter. The word regulate is defined by Webster as meaning, "to adjust or control by rule, method, or governing principles or laws." One of the well recognized synonyms of regulate is rule, and another is govern. So, in Bouvier's Law Dictionary a definition of regulate is "to subject to governing principles or laws." We are of opinion that when its charter expressly conferred upon

the City the power by ordinance of "regulating all pub-
lic grounds belonging to the City, in or out of the corpo-
rate limits," that this embraced the power to enforce
these regulations.

The case before us is to be distinguished from those
authorities, relied on for plaintiff in error, which take a
distinction between the right, on the one hand, of a
municipal corporation to own lands for park or other
purposes beyond the corporate limits, with the incidental
right to exercise the powers ordinarily incident to owner-
ship, and the right, on the other hand, to exercise govern-
mental authority over such territory. None of the cases
in which this distinction has been recognized and en-
forced, so far as we have observed, are cases in which
the charter granted by the Legislature contained lan-
guage of similar import to that hereinbefore noted, by
which the power is expressly conferred to regulate by
ordinance public grounds belonging to the City, either
in or out of the corporate limits. The extraterritorial
effect of a City ordinance depends upon the legislative
authority conferred. There is much authority to sustain
the contention that under general powers municipalities
may exercise certain extraterritorial powers, when the
possession and exercise of such powers are essential to
the proper conduct of the affairs of the municipality. And
this has been recognized particularly in cases in which
health and safety are involved. See *In Re Blois*, 179
Calif., 291, and cases there reviewed. But it is unneces-
sary for us in the instant case to determine whether or
not this general rule has application here, since, as al-
ready indicated, we are of opinion that the language of
the charter expressly confers the power exercised.

The holding in *Malone* v. *Williams*, 118 Tenn., 390,
relied on for plaintiff in error, is without application

here.    There the territory beyond the corporate limits was not owned by the City, and the property rights of private owners were affected, and it was on this ground that the Court denied the constitutionality of the legislation.