JACKSON *v.* B. LOWENSTEIN & BROS., INC.

(*Nashville,* December Term, 1939.)

Opinion filed February 17, 1940.

EXBY, MORIARTY & PIERCE, KENNETH RAYNER, and AU-
VERGNE BLAYLOCK, all of Memphis, for plaintiff.

KING, TAYLOR & KING, of Memphis, for defendant.

MR. SPECIAL JUSTICE EDWARD J. SMITH delivered the
opinion of the Court.

This is an appeal from a judgment of the trial court
sustaining a demurrer to the declaration, and dismissing
the plaintiff's action for personal injuries.

The declaration states, in substance, that the defend-
ant operates a large department store in the city of Mem-
phis, and that the South Main Street door, leading from
the street, through which patrons and customers enter
the store, is directly faced by a narrow stairway, with-
out handrails, descending from the first floor to the

basement floor to which customers and patrons are invited to descend.

At about half the distance between the first and basement floors there is a right angle turn to this stairway, and on the first floor a large rubber mat was spread on the area inside the street door, in such a way that one of its edges overlapped the first step of the stairway leading to the basement.

With these conditions existing, between one and two o'clock on the afternoon of January 31, 1938, Mrs. W. D. Holloman, who was carrying her infant daughter in her arms, and was accompanied by her father and mother, Mr. and Mrs. R. A. Atkins, entered the store of the defendant through the South Main Street entrance for the purpose of making purchases therein.

Wishing to descend to the basement floor, and believing that she had a sure footing, she stepped on the overlapping edge of the rubber mat, lost her footing, and was thrown, with the baby in her arms, down the stairs to the landing at which point there was a right angle turn in the stairway, leading to the basement.

Her father, and a number of others in the store, seeing her predicament, rushed to her assistance, and when her father had reached the right angle turn of the stairway, others who were seeking to aid her, jostled him so that he lost his balance, and fell from the right angle turn in the stairway down the stairs, leading to the basement, which Mrs. Jackson, a customer, was ascending, at the time, so that Mr. Atkins was thrown violently against her, causing the injuries upon which her suit is based.

The defendant demurred to the declaration on four grounds, which, in varying form, are based on the proposition that under the facts stated in the declaration, the

injury which Mrs. Jackson received was not reasonably foreseeable, and was not the natural and probable consequence of Mrs. Holloman's fall down the stairway.

As negligence cannot operate in a vacuum, and an act, which, under one set of circumstances might be harmless, under different circumstances may be injurious, and cause harm to another, it would be bootless to engage in an extended discussion of the authorities dealing with legal causation.

Two comparatively recent cases, *S. S. Singleton Abbey* v. *S. S. Paludina* (1927), A. C., 16, and *Palsgraf* v. *Long Island Railroad Company* (1928), 248 N. Y., 339, 162 N. E., 99, 59 A. L. R., 1253, discuss at some length legal cause and effect in the law of torts, and significantly enough in the first case three of the law lords were of the opinion that there was no liability, while two were of the opinion that there was, and in the second case four judges concluded that there was no liability, while three were of the contrary opinion.

These two cases, by virtue of the sharp difference of opinion of the judges, should be a warning to appellate courts not lightly to assume the primary duty of determining liability or nonliability, in actions of tort, but to leave that duty where the Constitution has placed it, with the jury, as triers of facts, and if they act capriciously and arbitrarily to supervise their action.

An interesting discussion of the subject now in hand may be found in Goodhart, The Unforeseeable Consequences of a Negligent Act, 39 Yale Law Journal (1930), 449, reprinted in his essays, Jurisprudence and the Common Law, under the title *The Palsgraf Case* 129.

A common sense definition of legal cause and effect is furnished by *Armstrong* v. *Montgomery Street Railway Co.* (1899), 123 Ala., 233, 26 So., 349, 354, where it is said:

"The logical rule in this connection, the rule of common sense and human experience as well (if, indeed, there can be a difference between a logical doctrine and one of common sense and experience, as some authorities appear to hold), is that a person guilty of negligence should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact existed, whether they could have been ascertained by reasonable diligence or not, would, at the time of the negligent act, have thought reasonably possible to follow, if they had occurred to his mind. 1 Sher. & R. Neg., sec. 29."

Relevant considerations in determining whether an intervening force is a superseding cause of harm to another are stated in Restatement, Torts, sections 442-447, in the form of propositions with comment and illustrations, and in their treatment of this subject, the authors happily have discarded "proximate and remote cause," "chain of causation," "new intervening act," and like phrases, which have long tended to confuse, rather than aid, courts and juries in the trial of actions based on torts.

When it is stated, as unfortunately it so often is, that when the facts are undisputed, the question of proximate cause is one of law for the court, all that is meant is that when only one reasonable inference can be drawn from the facts, there is no question to submit to the jury.

That it is inaccurate to say that the presence or absence of proximate cause is a question of law, is made clear by the following quotation from Thayer's Treatise on Evidence (1898), 250:

"Equally, when courts or statutes have fixed the legal standard of reasonable conduct, e. g., as being that of a reasonable man, and have no exacter rule, the determina-

540

tion of whether any kind of behavior conforms to it or not is a mere question of fact. It is not a question of law because there is no rule in question. That, in reaching their conclusion, the jury must reason, and 'must judge the facts,' is not material.''

■ As we must assume, for the purpose of this appeal that the defendant was guilty of at least *prima facie* acts of negligence so far as Mrs. Holloman is concerned, the question we are to decide is whether the consequences in the train of this act of primary negligence, which resulted in the injury to Mrs. Jackson, could be held by a jury, acting reasonably, to warrant a verdict in her favor, or, differently put, if a jury should award her a verdict, would an appellate court be justified in setting it aside on the ground that it was arbitrary and capricious.

■ The defendant in error cannot call on the members of this court temporarily to assume the role of jurymen, and in that capacity determine whether if they were members of a jury they would find under the facts for Mrs. Jackson, for, as stated, if a jury ultimately should so find, the question for the appellate court would not be, if they had been members of a jury would they have assented to such a verdict, but rather in finding such a verdict, did the jury act unreasonably and arbitrarily.

Moved by a common and natural impulse, Mr. Atkins and others, who witnessed the accident which happened to Mrs. Holloman, rushed to her assistance on the landing at the bottom of the narrow flight of stairs, which led from the first floor to the basement.

In the presence of such an accident, ordinary human beings do not act and cannot be expected to act with cool and calm deliberation, but uniformly they act with laudable impetuosity and even unmeant rudeness. Their minds are concentrated on helping the person in distress

and momentarily they forget the presence of each other in their common desire to render the victim of an accident immediate succor. Their muscular actions under such conditions are quite involuntary, and they would naturally be much surprised to learn, if one whom they jostled or pushed against would sue them for assault and battery, even though their conduct under slightly varied conditions might amount to that offense.

Acts done under the circumstances stated in the declaration are largely automatic, and the actors cannot reasonably be expected to avoid pushing and shoving others, when all are united in the common purpose of aiding the person who is the victim of an unfortunate and apparently serious accident.

The impact which Mr. Atkins received on the stairway landing on this occasion was wholly unpremeditated on the part of the person or persons who pushed or shoved him, and under the conditions here present the acts of those who were rushing to the assistance of Mrs. Holloman were mechanical.

To use a phrase, which should be discarded, "the chain of causation" was not broken by any "new intervening act," but the injury, which Mrs. Jackson received, flowed, as we have said, in a mechanical way, out of the eagerness of bystanders to help Mrs. Holloman.

If when rushing down the stairway, a man, who, by a mere coincidence, happened to be there, saw Mr. Atkins, against whom he had a grudge, and taking advantage of his presence, struck a blow which caused Atkins to fall against Mrs. Jackson, we would have a "new intervening act" for which the defendant would not be liable, but that is not the case presented here.

It should be readily apparent that an act which, under a given set of circumstances, fairly could be termed in-

voluntary and automatic, might, under slightly varied circumstances, be purposeful and intentional, and while it is true that an alleged negligent act often falls in the twilight zone of liability, it is not the function of appellate courts in the first instance to decide twilight zone cases.

Apparently the case at bar finds strong support by analogy at least in the famous "squib case," *Scott* v. *Shepherd*, 2 Wm. Bl., 892 (1773), 1 Smith's Leading Cases (1903), 454.

 In view of the settled rule of practice that every reasonable intendment must be made in favor of a pleading when challenged by a demurrer, the court is of the opinion that the declaration states a cause of action which the plaintiff is entitled to have tried on the merits, and accordingly the judgment is reversed, and the case remanded.

The defendant in error will pay the costs of the appeal.