# WHITE v. SEIER.
# WHITE v. McILWAINE.—264 S. W. (2d) 241.

Eastern Section.   July 27, 1953.

Petition for Certiorari denied by Supreme Court, December 11, 1953.

438

Fowler, Long & Fowler and Wilbur W. Piper, all of Knoxville, for plaintiff in error.

Frantz, McConnell & Seymour, E. Bruce Foster and J. W. Mills, all of Knoxville, for defendants in error.

HOWARD, J. These consolidated actions for personal injuries and property damages grew out of an automobile accident which occurred on U. S. Highway 70, at a point ten miles west of Cookeville, Tennessee, about midnight on November 13, 1951, when a Chevrolet car owned and driven by the defendant, L. S. White, collided with a Pontiac automobile owned by Henry W. McIlwaine, one of the plaintiffs, and driven by James E. Seier, the other plaintiff. The collision occurred on the south side of a curve in the highway when the Chevrolet, which was traveling downgrade, skidded from the right to the left into and struck the front of the Pontiac, which had come to a stop on the south shoulder of the road. The curve in the highway was to the north, and the concrete pavement was from 20 to 22 feet wide and was dry, though there was a wet place on the pavement where the Chevrolet first started skidding. The Pontiac was traveling in an eastwardly direction toward Cookeville, and the Chevrolet was traveling in the opposite direction toward Nashville, where the defendant lived. Plaintiffs lived in Knoxville and were returning to their homes from Spokane, Wash-

ington, where they had gone to attend the wedding of Mr. Seier's son.

Each of the declarations was in two counts, the first counts alleging in substance that the defendant was driving at a high and dangerous rate of speed and lost control of his car as he rounded a curve in the highway; that plaintiff Seier, upon seeing the defendant's car out of control, drove the Pontiac onto the right shoulder of the road and came to a complete stop; that defendant's automobile turned completely around on the pavement and skidded backwards for a distance of from 50 to 75 feet across the pavement before striking the front of the Pontiac. Both declarations allege that as a result of the collision plaintiffs received serious personal injuries. Then follows a description of the injuries which will hereinafter be considered.

Under the second counts the plaintiffs allege that the defendant was operating his car dangerously and recklessly and with inadequate or improperly adjudged brakes, in violation of the provisions of Code Sections 2681, 2682 and 2695. (All Sections refer to Williams' Tennessee Code.) Plaintiff McIlwaine also sued for damages to his Pontiac.

The defendant filed a plea of general issue, and being required to plead specially, admitted that when a short distance from the point of impact his car went out of control and skidded into the Pontiac in the way and manner alleged. Defendant denied, however, that his car skidded the distance alleged, and denied that he was driving at a high, dangerous and reckless rate of speed. He averred that he was driving along the highway where conditions were excellent, but that a slick place on the pavement, of which he had no knowledge, caused his car to skid and go out of control. He especially denied that

either of the plaintiffs sustained the personal injuries alleged, and plead contributory negligence on the part of Seier, the driver of the Pontiac.

Upon the overruling of the defendant's motion for peremptory instructions, the jury returned the following verdicts for the plaintiffs: $9,500 for Seier, and $3,000 for McIlwaine, as follows: $1,800 for personal injuries, and $1,200 for property damages. These verdicts were approved by the trial court and judgment was accordingly entered. Motions for a new trial were seasonably made and overruled, and this appeal resulted.

It is insisted that there was no evidence to support the verdicts and that the court erred in refusing to sustain the defendant's motion for peremptory instructions made at the conclusion of all the evidence.

Where there are conflicts in the evidence, this Court cannot assume the duty of determining liability or non-liability in tort actions, but must leave such duty with the jury as the triers of facts. Jackson v. B. Lowenstein & Bros., 175 Tenn. 535, 136 S. W. (2d) 495. Nor will this Court disturb a verdict if there is any material evidence to support it. In the instant cases the plaintiffs are entitled to every reasonable and fair inference that can be drawn from the evidence presented, and if the verdicts are supported by any material evidence, they must be upheld. Applying the foregoing rules to the evidence presented, we think that this insistence is without merit.

Plaintiff Seier testified that when he first saw the approaching Chevrolet car it was from 150 to 200 feet away, at which time it was in one of the "S" curves and traveling very fast; that it "didn't come very far around the curve until he started in a spin back and forth until he straightened out, and when he straightened out the back of his car came into the face of ours," that upon seeing

the Chevrolet skidding and out of control, he drove the Pontiac to the right shoulder of the road and stopped, hoping that the skidding car "would spin by me"; that before the collision the Chevrolet skidded from 50 to 75 feet, and the impact was so great that it knocked the Pontiac from 6 to 8 feet down the highway; that the steering wheel of the Pontiac was torn out and the front seat on which he and McIlwaine, who was asleep, were riding, was knocked loose and pushed against the rear seat. Both plaintiffs testified that the defendant told them that he was going too fast, hit a wet place on the pavement, and that his brakes locked; that the defendant further said "there was no use standing there apologizing, * * * that it was his fault; that he couldn't help it, and told us that he would see that everything was taken care of." After the accident the plaintiffs were taken to Cookeville where they received first aid and spent the night. On the following day they were met by Mrs. Seier, wife of the plaintiff, who took them to Knoxville in another car.

The defendant denied that he was driving at a high rate of speed at the time of the accident, and estimated his speed at from 20 to 25 miles per hour. He said that when he first saw the Pontiac it was from 40 to 50 feet away, and that his car, upon striking a wet place on the pavement, skidded from 30 to 35 feet before the impact. He did not deny making the statements that it was his fault and that he was driving pretty fast, as testified to by the plaintiffs.

The proof showed that the defendant's car was badly damaged, that it was knocked out of line, that the front seat was knocked onto the rear seat, and that his estimated damages were $500.

Under the circumstances we think there was ample evidence of negligence on the part of the defendant

to support the verdicts; that there was evidence from which the jury could find that the defendant was not keeping a proper lookout ahead, did not have his car under proper control, and was driving at a dangerous and reckless rate of speed. Furthermore, the length of the skid marks made while the defendant's car was skidding backwards indicated that the car was traveling at a very high rate of speed. Where the evidence is in conflict, questions of negligence and contributory negligence are for the jury. McBroom v. S. E. Greyhound Lines, 29 Tenn. App. 13, 193 S. W. (2d) 92; Campbell v. Campbell, 29 Tenn. App. 651, 199 S. W. (2d) 931. Likewise, questions of ordinary care and proximate cause are for the jury. Southeastern Greyhound Lines v. Groves, 175 Tenn. 584, 136 S. W. (2d) 512, 127 A. L. R. 1378; Campbell v. Campbell, supra; Fields v. Gordon, 30 Tenn. App. 110, 203 S. W. (2d) 934.

■ Next it is insisted that the trial court erred in refusing to sustain the defendant's motion to strike portions of the plaintiffs' declarations alleging back injuries, on the grounds there was no evidence to support these allegations. It appears that the trial court, upon defendant's motion, struck from plaintiff Seier's declaration the allegations that plaintiff "suffered an acute ruptured disc between the fifth lumbar and the first sacral segment of his spine" and "as result of said ruptured disc or discs," and from McIlwaine's declaration the words "permanent injury," and "torn," but refused to sustain the defendant's motion in its entirety. This motion was properly overruled, as there was undisputed evidence that both plaintiffs sustained back injuries in the accident.

It appears that Seier, who was vice president of the Purity Packing Company, a Knoxville concern, sustained a back injury in January, 1951, while lifting a piece of

heavy machinery, and had to go to the hospital where he was placed in traction for several days. The doctor described his injuries as a ruptured disc, and after being discharged from the hospital it was necessary for him to wear a heavy brace for several weeks to support his back. This brace was discarded about 8 months prior to the accident, during which time when needed he would assist with the butchering of animals and packing of meat and other heavy work at the plant. On his visit to Spokane, Washington, he fished, went deer hunting and also assisted his son in digging a basement under his house, without noticeable back pains. The evidence was undisputed that Seier had no further trouble with his back from the time he discarded the brace until the accident when, according to his testimony, he received severe blows to both his legs and knees and thought that his legs were broken; that because of his injury his legs felt like they were paralyzed, and that McIlwaine had to assist him in getting out of the car. He testified that since the accident his back had hurt him continuously; that he suffered severe pains in his legs as far down as his knees, and that he did not have these pains in his legs prior to the accident; that he tired easily and was unable physically to do a day's work.

It further appears that in February, 1952, nearly three months after the accident, Seier was sent to the hospital by Dr. R. G. Brashear where he was kept in traction for 11 days, and since his discharge he has had to wear a brace continuously. That he is unable to work regularly and appears to suffer from severe pains in his back and legs was testified to by his wife and also by George L. Hunter, one of his business associates.

Regarding Seier's injuries, Dr. Brashear, an orthopedic surgeon, testified as follows:

"Q. Doctor, do you have an opinion as to the extent of Mr. Seier's present disability? A. Yes sir, I thot the man had thirty or forty percent disability as far as long hours of standing and bending and lifting is concerned.

"Q. Is that the kind of work he does to your knowledge? A. Yes sir.

"Q. What is your opinion as to whether or not he will have any permanent condition in this back, whether or not this back condition will be permanent? A. Well, yes I feel that a man with this kind of back is going to always have back ache. He is going to have to protect it and favor it and pet it, and the more he favors and pets it the less trouble he will have. That is about the size of it.

"Q. Doctor, the condition you found Mr. Seier in when you examined him, and while you treated him, would you say that condition is one that would be calculated to cause the man much or little pain? A. Well, there again it would depend on the action the man had to have. If he could lie down I don't think he would have too much pain, but if he just had to work he will have pain. It is the nature of this kind of pain to have recurrence of acute pain, and when he does he will have to lie down and take sedative drugs. The answer would be relative.

"Q. When you first saw him was he suffering from much or little pain would you say? A. Yes sir, he had severe pain at that time.

"Q. Dr. Brashear, tell the court whether or not an automobile accident which would cause a man's legs to be thrown, or his knees to be thrown against a dash board in an automobile, and his chest thrown against the steering wheel of an automobile, and his

head bumped on something on the inside of an automobile, would be likely to cause an injury to, or to aggravate an already existing condition in the man's lower back? A. Yes, I think that would be a natural way to get the low back hurt.

"Q. Would that likewise be such an injury, or such an accident as would aggravate an arthritic condition he might have? A. Yes sir.

\* \* \* \* \* \*

"Q. Dr. Brashear, assuming his back was in such condition that he could do the normal things he had done throughout his lifetime prior to this accident, and that after this accident he could no longer do things, would it then in your opinion be speculative as to whether or not the automobile accident was the cause of it? A. No sir, if his complaints and symptoms could be dated to the automobile accident I don't think it would be speculative."

It further appears that before the trial Seier was examined by Dr. Inge, at the defendant's request, and it may be assumed since Dr. Inge was not called as a witness that his testimony would have corroborated the medical testimony adduced by Seier.

Besides other injuries, which will hereinafter be described, McIlwaine testified that for about 3 months after the accident his back was very sore and uncomfortable, and caused him considerable pain. Dr. Jarrell Penn testified that McIlwaine complained to him on November 30, two weeks after the accident, of pains in his back in the region of the lower dorsal; that he made an examination and found that the spinus processes were tender to pressure, probably from muscle strain.

Next the defendant contends that the trial court erred in refusing to charge Special Request No. 1 that where an injury is alleged to be the result of several acts of negligence, no one of which is charged to have caused it alone, proof of a single one of the acts will not suffice; and that unless the jury found that each of the plaintiffs had proved by a preponderance of the evidence all of the acts of negligence alleged in the respective counts, the suit must fail and it would be the jury's duty to return a verdict for the defendant. In support of this contention the defendant relies upon the rule announced in Nashville, C. & St. L. Ry. v. Whitt, 5 Tenn. App. 463.

This request was properly refused because not applicable to the pleadings in the cases, there being no allegations of interdependent concurring causes, no one of which was sufficient alone to have caused the injury. The allegations of negligence are separate and proof of any one was sufficient to justify a recovery. Each of the first counts alleges only one efficient act of negligence, to wit: The excessive speed at which defendant was driving his automobile. The second counts allege several statutory grounds of negligence which are independent one from the other and proof of any one would justify a recovery. These grounds of negligence in the statutory counts are not concurrent or interdependent. Therefore, the rule announced in Nashville, C. & St. L. Ry. v. Whitt, supra, is not applicable. In C. J. S., it says:

"Where defendant's negligence is alleged as consisting of several separate and distinct acts or omissions, plaintiff has the right to prove all of them, but he is not required to do so; he may submit his case on any of the acts or omissions that are sustained by proof, and it is sufficient for him to prove any one or more of such acts or omissions as being the negli-

gence which caused his injury, provided the case is submitted on the ground or grounds proved and those submitted are not contradictory or destructive of each other. This rule applies where the different acts are alleged in one count, and also where they are alleged in several different counts, since in such a case plaintiff is entitled to recover if one count is sufficient and the proof supports it. The necessity of proof on the part of plaintiff where several acts or omissions are pleaded requires only that he prove any one or more of the negligent acts or omissions alleged which caused the injury, and which are sufficient to constitute the cause of action averred against defendant; and a judgment founded on several assignments of negligence will not be disturbed if the evidence sustains one or more of the grounds alleged, * * *. In accordance with this rule, the inclusion in a pleading of an allegation of negligence which is not proved does not affect the character of the complaint as a pleading, or affect plaintiff's right to submit his case on a specification having evidential support.'' 65 C. J. S., Negligence, Sec. 200, pp. 937, 938.

Next, insistence is made that the trial court erred in charging the jury with reference to inadequate or improperly adjudged brakes, because there was no evidence to support this instruction. While the evidence was meager on this point, we think that it was sufficient to support the charge.

Plaintiff Seier testified that defendant's car started skidding when it was from 150 to 200 feet away, and that it skidded backwards from 50 to 75 feet before the impact; that the defendant said ''that he put on his brakes and it threw him into a spin,'' and McIlwaine testified that

the defendant said "he hit a wet spot and * * * his brakes locked and his car went out of control."

It appears that the jury returned a general verdict, and the rule is well settled that a general verdict is not vitiated by the absence of proof on some counts of the declaration if there is any evidence to sustain the allegations of a single count. Code Sec. 8824; East Tennessee, V. & G. R. Co. v. Gurley, 80 Tenn. 46; Tennessee Cent. Ry. Co. v. Umenstetter, 155 Tenn. 235, 291 S. W. 452; Sledge & Norfleet v. Bondurant, 5 Tenn. App. 319; Allen v. Melton, 20 Tenn. App. 387, 99 S. W. (2d) 219; Wilson v. Moudy, 22 Tenn. App. 356, 123 S. W. (2d) 828; Schumpert v. Moore, 24 Tenn. App. 695, 149 S. W. (2d) 471; Taylor v. Cobble, 28 Tenn. App. 167, 168, 187 S. W. (2d) 648. Furthermore, under Code Section 10654 this Court will not reverse for errors complained of in the charge unless it shall affirmatively appear that said errors affected the results of the trial.

The defendant complains because the trial court refused to charge Special Requests Nos. 4, 5 and 8. The substance of these requests was that the jury could consider only such injuries as resulted from the defendant's acts of negligence; that the jury could not speculate as to whether Seier's injuries were temporary or permanent, or whether his disability or loss of income resulted from the accident or from previous disability caused by the ruptured disc.

After carefully considering these requests in the light of the general charge, we find no error in the court's refusal, because the substance had already been covered in the general charge. To deny a special request, the substance of which has been covered in the general charge, is not error. Jones v. Noel, 30 Tenn. App. 184, 204 S. W. (2d) 336; Graham v. Cloar, 30 Tenn. App. 306,

205 S. W. (2d) 764; Spivey v. St. Thomas Hospital, 31 Tenn. App. 12, 211 S. W. (2d) 450; Carmen v. Huff, 32 Tenn. App. 687, 227 S. W. (2d) 780.

▬ The defendant also complains because the trial court refused to charge Special Requests Nos. 6 and 7. The substance of these requests was that there was no evidence to support plaintiffs' allegations that their capacity for enjoyment of life had been permanently impaired. These requests were properly refused because (1) they were inaccurate, and (2) there was evidence to support the allegations. The refusal to give an inaccurate special request is not reversible error. Llewellyn v. City of Knoxville, 33 Tenn. App. 632; 232 S. W. (2d) 568.

▬ Next, it is insisted that the trial court erred in charging the jury, as follows:

"If the afflictions from which the plaintiff, Seier, had been suffering before the alleged accident did not cause pain and suffering, but after the injury did cause pain and suffering, then the accident is the proximate cause of the injuries sustained. A defendant is not entitled to receive a reduction of the damages which plaintiff suffered on account of such infirmities."

It appears that the foregoing charge conforms with the rule approved by our Supreme Court in Elrod v. Town of Franklin, 140 Tenn. 228, 204 S. W. 298, wherein the plaintiff, a woman pedestrian, tripped over an obstruction in a city sidewalk, and her fall, concurrently with previous injuries from childbirth, proximately caused other and additional injuries which would not have resulted at that time, but for the fall.

It is argued that by reason of the charge the defendant became liable in damages for the plaintiff's pain and suf-

fering after the accident, merely because he did have an accident and not because of any previous injury, and that the charge invaded the province of the jury. We find no merit in this argument, as the able trial judge had previously instructed the jury that they could consider ''only such injuries to the plaintiff that have proximately, directly and naturally resulted from some act of negligence, if any, on the part of the defendant. Injuries resulting from any other cause cannot be the basis of any recovery that you might believe the plaintiff to be entitled to, if from the preponderance of the evidence you first determine the plaintiff is entitled to recover at all,'' and in the absence of a showing to the contrary, it may be conclusively presumed that the jury followed the Court's instructions.

■ Finally, it is insisted that the verdicts were excessive, so excessive as to indicate passion, prejudice and caprice on the part of the jury. It appears that McIlwaine's head struck the dashboard of the car, in which a large dent was made, and that his nose and mouth were badly bruised and several of his teeth permanently damaged. In addition to these injuries and the back injuries heretofore described, the second metacarpal bone of his left hand was broken. On his return to Knoxville this hand was placed in an aluminum splint where it remained for 3 weeks. His nose for several days was approximately twice its normal size, and he appeared to have suffered much pain from both his broken hand and bruised nose.

Dr. Sharp, the dentist who examined McIlwaine's teeth, testified that he found the enamel to be cracked on 5 teeth, including the two upper center and right upper lateral incisors, and the right lower incisor and the tooth to its right, and that two or three other teeth contained many

small chips; that the cracks were plainly visible on placing a light behind the teeth, and that the cracked enamel would not heal and unite as would a bone injury. McIlwaine's medical expenses totaled $103, and under the evidence we do not think that the $1,800 awarded him for his personal injuries excessive. Nor do we think that the $1,200 awarded McIlwaine for property damages to his Pontiac excessive.

The evidence showed that the Pontiac originally cost $2,200 and had been driven only 17,000 miles. W. C. Tallent, an experienced used car dealer, testified that the Pontiac was worth between $1,750 and $1,795 just prior to the accident, and that immediately thereafter it was worth only $600. While there was no evidence as to the amounts, it appears that McIlwaine not only had the expense of hiring a wrecker to haul his car to Cookeville, but had a hotel bill there as well, and the jury probably considered these items in reaching its verdict.

After returning to his home in Knoxville, it appears that Seier, on November 14, went to Dr. William R. Jones for an examination, because of soreness in his chest. At that time Seier had several bruises on his chest, legs and knees, and a dislocated third index finger on his left hand. A fluoroscopic examination showed that he had no broken ribs, and after taping his finger he was advised by the doctor to return to his home and apply hot water bottles or heating pads to the bruised places. Dr. Jones testified that Seier appeared to be suffering from a great deal of pain in his chest, but that he made no mention of back pains.

It further appears that about ten days following the accident Seier tried to return to his duties at the Packing Company, but because of pains in his back he was unable to work. This disability in his back continued for ap-

proximately eleven weeks before he went to a doctor, because, as testified to by his wife and a business associate, Seier was afraid of doctors; that on February 2, 1952, Seier went to see Dr. Brashear, who placed him in the hospital in traction for eleven days, and upon being released he was told to wear the brace continuously, which he had discarded nearly a year previously. Dr. Brashear testified that Seier was suffering from a weakness or looseness of the muscles of the back, and as previously pointed out he had from thirty to forty percent disability "as far as bending and lifting and standing for long hours is concerned." Seier was unable to work for approximately seven weeks, but was paid his regular salary of $100 per week by the Packing Company, in which he was part owner. His medical expenses totaled $287.

The amount of damages in tort actions is primarily a jury question, and a verdict approved by the trial court is entitled to great weight, in the absence of a showing of fraud or corruption, D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 206 S. W. (2d) 897; Carman v. Huff, supra; Ezell v. Post Sign Co., 30 Tenn. App. 256, 205 S. W. (2d) 13.

In Reeves v. Catignani, 157 Tenn. 173, 7 S. W. (2d) 38, 39, the Court said:

"The amount of the verdict is primarily for the jury to determine, and next to the jury the most competent person to pass upon the matter is the judge who presided at the trial and heard the evidence."

And, in American Jurisprudence, it says:

"Moreover, the question of the excessiveness of a verdict is generally one for the determination of the trial court in the first instance, and its action in granting or refusing to grant a new trial on that ground will not be disturbed on appeal unless an

abuse of discretion is shown.'' Vol. 15, Sec. 205, p. 622.

As to whether the plaintiff Seier exercised reasonable diligence to minimize his damage by waiting eleven weeks before going to a doctor for treatment for his back injury, was a question for the jury under proper instructions, and it appears that the trial judge correctly charged the jury on this question.

It results that all the assignments of error will be overruled, and the judgment below will be affirmed at defendant's costs.

McAmis, P. J., and Hale, J., concur.